United States Court of International Trade
One Federal Plaza
New York, NY 10278



CHAMBERS OF
Gary S. Katzmann
JUDGE

June 24, 2021

Frank H. Morgan
Trade Law Defense PLLC
218 North Lee Street
Alexandria, VA 22314

Gregory J. Spak
White & Case, LLP
701 Thirteenth Street, NW., Suite 1100
Washington, D.C. 20005

Joshua E. Kurland
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

Myles S. Getlan
Cassidy Levy Kent (USA) LLP
900 19th Street, NW., Suite 400
Washington, D.C. 20006

Re:  <u>Government of Argentina v. United States</u>
     Consol. Court No.: 20-00119
     Questions for Oral Argument

Dear Counselors:

   In light of the COVID-19 pandemic, oral argument in this case will be held remotely via WebEx, in lieu of a proceeding at the courthouse, on Thursday, July 8, 2021 at 11:00 a.m.  The court will provide dial-in information to the parties.  Information on how the public can listen to open proceedings can be found on the court's website under "Upcoming Court Proceedings Accessible via Teleconference" (https://www.cit.uscourts.gov/upcoming-court-proceedings-accessible-teleconference).  The argument, if public and not closed, will be recorded and made available to the public via the court's website.  If you will be requesting a closed argument or portions of the argument, please inform my case manager, Geoffrey Goell, no later than close of business, Tuesday, July 6, 2021.  The court encourages the parties to maintain a public argument, if possible.

   The court has examined the parties' briefs and documents and would like counsel to submit answers in writing to the court's questions for oral argument by close of business on Friday, July 2, 2021.  Parties shall file public and, if necessary, confidential versions of their answers, of not more than twenty pages.  The oral argument shall be dedicated only to rebuttal arguments to the

answers filed by opposing counsel on Friday, July 2, 2021.  The court will also permit but not require brief opening statements.  Presentations shall not exceed thirty (30) minutes for the plaintiffs and thirty (30) minutes for the defendant and defendant-intervenor.

I. **Questions to Plaintiff the Government of Argentina ("GOA") and Consolidated Plaintiff LDC Argentina S.A. ("LDC")**

    1.    Please define the precise issue of first impression presented by this case.

          a.    Why does the court's holding in Marsan Gida Sanayi Ve Ticaret A.S. v. United States, 35 CIT 222 (2011) ("Marsan Gida"), that the statute authorizing changed circumstances review ("CCR") is silent on "what a CCR is or what a CCR entails" not resolve this issue? Id. at 228 ("[A] CCR may address a broad range of matters and the only limitation in the statute is the requirement that there be changed circumstances sufficient to warrant a review." (quotation and citation omitted)).  See also Def.-Inter. Nat'l Biodiesel Bd. Fair Trade Coal.'s Resp. to Pl.'s R. 56.2 Mot. for J. on the Agency R. at 22–24, Feb. 22, 2021, ECF No. 25 ("Def.-Inter.'s Br.").

    2.    Also in Marsan Gida, the court upheld Commerce's authority "to refrain from delving into an analysis of subsidization because that requires deeper analysis, appropriate for a full administrative review." Id. at 229.  What distinguishes that holding from Commerce's analysis in Biodiesel from Argentina: Final Results of Countervailing Duty Changed Circumstances Review, 85 Fed. Reg. 27,987 (Dep't Commerce May 12, 2020) ("Final Results"), at issue here?

    3.    NBB contests your characterization of the importance of the export tax differential by stating that Commerce relied on the GOA's export tax on soybeans in the Biodiesel from the Republic of Argentina and the Republic of Indonesia: Countervailing Duty Orders, 83 Fed. Reg. 522 (Dep't Commerce Jan. 4, 2018) ("CVD Order"), rather than the export tax on biodiesel or a differential between export taxes on the two goods.  Def.-Inter.'s Br. at 4–5.  How do you respond to this contention?  What authority supports your view of the CVD Order?

    4.    Assuming the court accepts Commerce's ability to change its initial conclusion that there were changed circumstances warranting further review, why was Commerce's reevaluation of the factual information on the record nevertheless erroneous in your view?  See Husteel Co. v. United States, 39 CIT __, __, 98 F. Supp. 3d 1315, 1357 (2015) (concluding that Commerce may reconsider its analysis of evidence between preliminary and final determinations).

5.  Why shouldn't the court afford Commerce <u>Chevron</u> deference to its decision to change the statutory framework during the course of the CCR? What authority supports your answer?

    a.  Where Commerce conducts an analysis under 28 U.S.C. 1675(b) when deciding to initiate a CCR, can Commerce revisit that determination during the review? What authority supports your answer?

    b.  What authority supports the claim that Commerce must conduct a review under 28 U.S.C. 1677(5) after initiating a CCR?

6.  Why shouldn't Commerce look to future policy plans in making CCR determinations to change a cash deposit rate that applies prospectively? <u>See</u> Joint Reply in Supp. of Pl.'s and Consol.-Pl.'s R. 56.2 Mot. for J. Upon the Agency R. at 12, Mar. 22, 2021, ECF No. 27 ("Pls.' Reply"). Wouldn't the Government face potential unsecured CVD duties if the cash deposit rate were lowered and the new GOA administration re-imposed the countervailable export taxes that formed the basis for Commerce's <u>CVD Order</u>?

7.  Could Commerce conduct another, future CCR to re-examine any policy changes under the new Argentine administration? Is that a feasible remedy unlike, as you contend, administrative review? Joint Mem. of P. & A. in Supp. of Pl.'s and Consol.-Pl.'s R. 56.2 Mot. for J. Upon the Agency R. at 21, Dec. 7, 2020, ECF No. 24 ("Pls.' Br.").

8.  What impact on any remedy ordered by the court does Commerce's untimely issuance of the <u>Final Results</u> have in light of cases stating that statutory deadlines are not mandatory unless Congress has made an express statement of consequences? See, e.g., <u>Jiangsu Zhongji Lamination Materials Co., (HK) v. United States</u>, 43 CIT __, __, 396 F. Supp. 3d 1334, 1355 (2019). <u>See also</u> Def.'s Resp. to Pls.' R. 56.2 Mot. for J. Upon the Agency R. at 6, 24, Feb. 22, 2021, ECF No. 26 ("Def.'s Br."). What authority supports your answer?

    a.  Did the delay in issuance of the <u>Final Results</u> prejudice any interested parties? <u>See</u> Def.-Inter.'s Br. at 28–29 (discussing the harmless error rule).

9.  You note that Commerce conducted several ex parte meetings and calls with domestic industry organizations and U.S. officials before issuing the <u>Final Results</u>. Pls.' Br. at 16–17. NBB asserts that you have not "explain[ed] how any such communications are relevant." Def.-Inter.'s Br. at 29. How do you respond to this assertion?

10. What cases and authorities best support your argument?

11. Are there any recent or pending Federal Circuit or CIT cases that may change the analysis?

II. **Questions to Defendant the United States ("Government") and Defendant-Intervenor National Biodiesel Board Fair Trade Coalition ("NBB")**

1. Does this case present an issue of first impression for the court? If so, what issue of first impression is presented?

2. What interpretation of the relevant statute did Commerce rely on in each of the CCR initiation, preliminary results, and Final Results?

    a. Under Commerce's interpretation, is any particular analysis required during the CCR initiation, preliminary results, and Final Results or is Commerce free to conduct any analysis it deems appropriate? What authority supports your answer?

    b. Was Commerce's analysis under 28 U.S.C. 1675(b) during the CCR initiation a final agency decision, or can Commerce revisit such a determination? If so, at what stage during a CCR can it do so? What authority supports your answer?

3. Is Chevron deference equally applicable to Commerce's application or invocation of statutes, in addition to its interpretation of statutes?

4. The Government explains that the GOA "showed signs of once again resorting to the use of differential export taxes" and "potentially abandoning the policy of neutrality" as evidenced by "a draft version of . . . legislation" and a party "platform development document." Def.'s Br. at 10. If the export differential did not actually change during the pendency of the CCR, why does this evidence support that Argentina's enacted export regime changes were nonetheless not changed circumstances? Why isn't a conclusion that a subsidy regime is "in flux," without evidence of corresponding changes in law or treatment of subsidies speculative?

    a. Did Commerce explain the relevance of potentially detracting evidence in the fact that these legislative proposals were not enacted by the Argentine government?

    b. What, if anything, distinguishes this evidence from legislative proposals and party platforms that may be discussed or proposed in any deliberative lawmaking body? Must Commerce examine every piece of relevant pending or recently proposed legislation in every CVD investigation or review, even if that legislation is never ultimately enacted?

5. Could Commerce conduct another, future CCR to re-examine any policy changes under the new Argentine administration?

   a. Plaintiffs assert that current "high duty rates are shipment prohibitive making an administrative review unlikely" unless the rates are adjusted through CCR proceedings. Pls.' Reply at 12. How do you respond to this assertion?

6. Plaintiffs contend that "Commerce never explained or justified the basis for extending the deadline mandated by the regulation." Pls.' Br. at 17. What reason, if any, did Commerce give for the August 2, 2019, hold on the CCR deadlines? If Commerce did not explain this decision, why was it not required to do so?

7. Plaintiffs state that Commerce conducted several ex parte meetings and discussions with domestic industry organizations and U.S. officials before issuing the Final Results. Id. at 16–17. How, if so, did information from these ex parte meetings and discussions contribute to the Final Results?

8. During the CCR, why would an argument from Plaintiffs regarding timeliness have not been futile to the timing of Commerce's Final Results? See Pls.' Reply at 12–13.

9. What cases and authorities best support your argument?

10. Are there any recent or pending Federal Circuit or CIT cases that may change the analysis?

Sincerely,

*/s/ Gary S. Katzmann*
Gary S. Katzmann
    Judge
